case for argument is United States v. Franco. Whenever you're ready. Good morning, your honors. May it please the court. Miguel Franco's violation of supervised release had two errors. First, his supervised release was told while he was in jail, so he should not have been violated for a jail assault. Second, the court should not have relied on hearsay to prove that he was the person in a grainy, blurry, bouncy video that mostly showed people's feet. Both of these errors should result in a remand. Why was it told? It was told under the plain language of section 3624E. There are two prongs for tolling. First, that you're incarcerated at least 30 days, which he was, and second, that you're imprisoned in connection with an offense. He was in prison in connection with his federal drug offense. Well, isn't it in connection with, to be more precise, in connection with the conviction? And so what's the conviction that he's in custody in connection with? You're saying it's just the underlying offense that he was on supervised release for? Exactly, your honors. It's his federal drug conviction because violations of supervised release are very much in connection with the underlying conviction. The Supreme Court has made that clear in a number of cases. For example, in Johnson and Haymond, saying that both the violation and the punishment flow from the original conviction. What the Supreme Court and this court has also made clear is that in connection with has very, it's an expansive phrase, it can mean relating to, in association with. This court said that in Busey, when you look at the very similar set of circumstances, and found that the supervised release was told when somebody was imprisoned in connection with a parole violation. Now, this case is a supervised release violation instead of a parole violation, but that is not a material difference. In both cases, the imprisonment is in connection with the original offense. Your argument, I think, is compelling, particularly because if this were a situation where somebody's on supervised release, they're incarcerated for some different offense, a new offense, and then they tried to argue, well my term of supervised release ran, I completed that, and in a future time, they were trying to be violated for it, they would say, well, you know, it ran. I think the government would be the first to say, no, it told. It told under mom, and you can still be violated for that period of supervision. But my question is slightly different. Given that there were a number of specifications for violation, and given that the sentence that your client received was higher for the new violations, and that the violation for the assault received only, I think, ten months, and I'm not talking about the mootness issue, given that there were specifications that justified the violation of conditions of supervised release, do we need to reach this issue? Because the end result would be the same, wouldn't it? If the other conditions were sufficient? This court should reach this issue for a couple reasons. First, the government hasn't made that argument. They've made this mootness argument, which doesn't apply. Second, we are arguing also about the other specifications that your honor is talking about, which I will turn to as well. So we also have compelling... Right, no, my question assumed we found your claims on those not to be as compelling. Well, hopefully you won't, your honor, but it still remains that this specific specification was a quite serious one, and it is one that could be used against him in future violation proceedings. I am sure if there is a future proceeding, the government will reference the assault conviction as well as whatever else. So it is something that the court should still reach. I mean, I suppose there may be some conditions, special conditions of supervised release that someone ought to still follow, even if they're incarcerated. I understand your argument. There are others that someone can't follow, correct? That's true, your honor. It could potentially be violated for violating a condition that they couldn't possibly comply with if they're incarcerated. So that's one of the policy reasons that I think underlies Section 3624E, but under the plain language of that statute, when you're imprisoned more than 30 days in connection with an offense, with a conviction, excuse me, then your supervised release is told. And in Mott, the Supreme Court explains you are not... The court does not have to supervise you when you're in prison. That's not part of what happens while you're in prison. There are other rules that you need to follow. There are rules that exist, or regulations, when you are in prison, but they're not supervised release. Your supervised release has stopped running. And that makes sense. You're not both under supervision and in prison. It's one or the other. And the courts talk about that, this court and the Second Circuit. The purposes of the two things are different. And Mott went even further because it said the 30 days, you can toll if it turns out later that that period of pretrial detention winds up being credited for a sentence. Correct, Your Honor. That's right. And Mott applies here too. So even though Mr. Franco was awaiting presentment at the moment that the charges arose from, he is incarcerated more than 30 days. And it's a backward looking analysis. That's what Mott says. And all of these cases show that both this court and the Supreme Court takes a very strict view of the plain language of the statute. They are not going beyond that. I have one last question. I don't want to ask too many, but this question, I think, for me, is important to ask. You argue that the court allowing Agent Ferro to testify that he obtained a copy of your client's picture and then compared it to the video, and that because he found his identity or potential identity from the Bronx DA, that that evidence is inadmissible hearsay. But in a hearing, even if Agent Ferro had testified, Hey, I was trying to figure out who this person was in the video. And so I went and did an investigative step to try to get some leads. Wouldn't that testimony come in anyway? Not for the truth of the matter asserted, but to explain what, if any, steps that a law enforcement person took as a result of obtaining that information. So I'm struggling to see why that wouldn't have come in anyway, not as hearsay. So what came in as hearsay was the identification. So first, it's the informant's comment to the agent that the person in the video, in the two videos, was the same person. No, I understand that, and I'd get it if that was the only source of identification. If it was somebody in the DA said, This guy in the video or in the still photo of the video is your client. That's different than law enforcement getting that lead and then showing it to his probation officer. I know he only saw him once. The court found goes to wait. But if that was the only basis of identification, but if all it was was an investigative lead and that could come in anyway, I'm struggling to see the harm. Do you see what I mean? Yes, Your Honor, but I don't think that's what the evidence showed here. The identification came from the informant and the member of the Bronx DA's office. That's the only reason that the agent had any view as to who was in the video. He had no knowledge of who Mr Franco was. He wasn't investigating Mr Franco. He had never met him. It's the informant's comment, and it's the Bronx DA members comment is why he says that person is Mr Franco, and he testifies that way. He says the informant is how I am explaining who is who in this video. That's hearsay. The probation officer's identification is merely confirmatory. The testimony shows the agent asked the probation officer. He says, I am investigating Mr Franco. Is this Mr Franco? And then the probation officer says, Yeah, so that is not enough, and that's not what the court is relying on. The court is relying on the agent's testimony, and the agent's testimony is based solely on hearsay. That's important here also because there is never any reason given by the government to today why those people didn't come in and testify, and that's not common in the cases that this court sees where you find good cause not to have the actual witness testified. Usually a reason is given because that's how you do the analysis. Here there is none. And then on the other side of the balance, you have defense counsel's strong interest in cross examining the people who actually know who Mr Franco is, not this agent who really doesn't know him. But you don't think that the court's ability to view the videotape directly and confirm or be satisfied that, okay, yes, this is Mr Franco, that doesn't relieve any potential harm from this? It might if the court had said that's what the court was doing. The court doesn't say that, and I'm not surprised because the video really is extremely difficult to even watch at all because it moves around so much and it's mostly pointed down. Those still shots that are pulled out are really the only times that you even see a flash of the person's face. That's not a situation where we can get a credible identification from someone that doesn't actually know who the person is, from someone who wasn't actually there, or at the very least it's just a circumstance where you want the testimony of the person who knows when there's no reason given why they can't testify. That's an error here. All right, Ms. Glashow or Mr. Pauzer, you've reserved some rebuttal. Thank you. Ms. Kostopoulos? Yes, Your Honor, good morning. Good morning, and it may please the court. Georgia Kostopoulos for the United States. The judgment of revocation below should be affirmed in all respects. Franco's assault on a fellow inmate on June 28th, 2023, as he was waiting to be presented and arraigned by the district court for a number of violations of supervised release, was in fact conduct that occurred while the defendant was on supervised release. See, I'm struggling with that, counsel. Obviously, assaulting somebody while you're in jail, you can be charged. That's a new crime. But to charge somebody with violations of conditions of supervised release when they're incarcerated, I'm struggling with it, and here's why. Recently had a case involving your very office, where somebody was on supervised release. They were incarcerated because of an offense, and then were released. They were out in the community. They were violated a second time, and the claim was, my term of supervised release had expired on one of the offenses. And your office took a very firm position that supervised release is told, and that once somebody's incarcerated, and we're lying on mom, and it doesn't matter even if it's less than 30 days, because even if it's only 20 days, those 20 days may count towards a sentence. That tolling went into place, and that the period of supervised release had not in fact been completed, and the person could be violated. So it seems to me you can't have it both ways. You can't on the one hand, your office take a position, supervised release is told, and we can charge somebody with violation of that, and in this case say, well, now it kind of continues to run while he remains incarcerated. Help me understand how your office can take such an inconsistent position. I'm happy to your honor, and I think the key here is that it's not an inconsistent position, and this is something Mont talks about, this is something Johnson talks about, this is something Busse talks about, and it's also something that Block talks about in reaching the opposite conclusion. There's a critical distinction between pretrial detention for a new state, federal, or local conviction, and pretrial detention in connection with supervised release and violations of supervised release. The first is part of the plain text of 3624E. It is part of the series of mechanisms that Congress has spelled out in the plain text of that statute for when supervised release can be told. The statute is very clear. Either the court has to revoke or toll supervised release, or by effect of detention in connection with a conviction under state, federal, or local law, the supervised release period is told. That wasn't what occurred here, and it's not what occurred in Montgomery County. But your opponents raised this point, which is the statute doesn't say new conviction or other conviction. The statute says incarceration for an offense that relates to a conviction. So I'm failing to see that distinction. You say Mont, but I don't think Mont stands for that proposition. And there's the Seventh Circuit case, right? But the Seventh Circuit case is unique, because there they weren't trying to charge somebody. It was different circumstances, I think, than here. So do you have a case that says precisely what you just said, that it hinges on it being a new offense? There is, Your Honor. And I think there's sort of two responses. Let me start first with the case. So turning to Block, there's a related case that Block, I believe, cites to or that refers to Block called United States v. Cole. So I'll read it to you. Accordingly, 3624E's tolling provision is in opposite, where a releasee is reincarcerated as a result of his original conviction. That's language from Block, and then citing to Cole from the Third Circuit, which says, Congress has provided for tolling in only one situation, where the defendant is imprisoned for more than 30 days for another conviction. That's language that comes from Block, and Block in turn cites to a decision from the Third Circuit. That's Cole, C-O-L-E. The second point, I think, Your Honor, and I recognize that there's a distinction in the statute, but the plain text of the statute is ultimately what's consistent with the government's position here. The statute reads, a term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a federal, state, or local crime unless the imprisonment is for a period of less than 30 consecutive days. So if somebody's ordered as part of their supervised release to attend treatment, to work, perform community service, pay restitution, and they're incarcerated, are you saying the conditions of supervised release, because under your theory, you could. Supervised release hasn't been, you know, they're still on supervised release. This is something that Johnson specifically addresses, though, Your Honor. There are a number of conditions that, by nature of being in detention, an individual cannot satisfy, conditions of supervised release, precisely like some of the ones that Your Honor mentioned. There are a number of conditions, and Johnson lists these out and is explicit about them. There are a number of conditions of supervised release that a defendant can, in fact, abide by, even when they are in pretrial detention. Not taking drugs, not committing new criminal activity, and that's precisely the violation with which Franco is accused and was ultimately found to have committed in this case. He was in a pretrial holding facility about to be presented to the district judge to be arraigned for his violations of supervised release in connection with his trafficking of narcotics in Maine, and he proceeded to violently assault another inmate. That is not one of the conditions, Your Honor, of supervised release that a defendant is incapable of abiding by while he is in pretrial holding or while he's in detention. And that's precisely one of the other flaws that sort of carries forward from the defendant's arguments here. This is the reading of the statute that is consistent with its plain text. It's consistent with the meaning of the statute, which provides only a narrow set of mechanisms by which supervised release can be told or revoked. There was no conviction here. The only reading of the statute that supports a conviction, which is the one that the defendant has espoused, would be that it would relate back to the original conviction, and that's inconsistent as well. It just feels like the government can charge him with assault for what he did. He's going to have consequences. It just feels like piling on to charge somebody with violation of supervised release when they're incarcerated. I mean, that doesn't strike you as sort of being somewhat unfair? I think, Your Honor, that the key point here is that supervised release is designed to serve a different set of statutory goals. And I think that the statements that the district court made during Mr. Franco's sentencing really highlight that there are different purposes of supervised release. The fact that a portion of his sentence was going to involve inpatient therapy and treatment for drug counseling and substance abuse, the fact that he was going to serve concurrent sentences. Supervised release is not meant to be punitive. It's meant to facilitate the defendant's return back into the community and also to recognize that there is... But it is punitive when you violate somebody and they're facing incarceration as a result of that violation. There is certainly a punitive aspect, Your Honor, but it's not primarily designed to be punitive. The purpose is to protect the community from an individual who, like Mr. Franco, committed violent and unlawful activity while on supervised release and had absconded from the district and from the supervised release that he was subject to. I think you're... I mean, to kind of go back to what Judge Kahn was suggesting about sort of the policy aspect of it, I think perhaps you're on stronger grounds if you're making a strictly statutory analysis. But to the extent that we haven't ruled on this explicit situation, I do tend to think there is certainly an oddity to the idea that this is what violations of supervised release are intended to get at. It just, you know, again, it's that idea of there are other consequences for this assault. And so, you know, to the extent you're suggesting, well, this is completely consistent with supervised release, I mean, I think that's a tougher argument to make. I hear you, Judge. And I think that ultimately this is a new question for the circuit to consider. I think what's critical here is that the Second Circuit should join the Third Circuit and the Seventh Circuit and, frankly, the consistent decisions that are reached in Mondt, in Johnson, in Busse, by distinguishing that those cases, in fact, involve new state convictions or new federal convictions and recognize that this is not one of the narrow set of circumstances identified in the statute under which tolling applies. There was no new federal or state or local conviction. The defendant was in custody in connection with the violation of the supervised release. There had been no tolling or revocation of the supervised release. And as a result, this is entirely consistent with the statutory framework. I want to turn briefly to the hearsay points, Your Honor, and specifically the argument that the defendant makes that the lower court erred, abused its discretion in admitting certain forms of hearsay. I think there are three key issues to remember with respect to the hearsay statements. Here, portions of the video that captured statements by the defendant and by the CI who was buying drugs from the defendant, as well as a statement that the special agent from the Maine Drug Enforcement Administration testified to, namely that the Bronx District Attorney's Office provided them with an investigative lead that they developed and ultimately confirmed the identity of Mr. Franco. I think there's three points to remember, Your Honors. First, this was not hearsay. These were statements by the defendant. There were statements by the CI that completed conversations that were being had with the defendant, who was a party opponent. And similarly, the statements by the Bronx District Attorney were not identifications of the defendant. They're really not? They're saying, yeah, this guy in the video is Hassi, that's Franco? That's not an identification? They weren't going to the truth, Your Honor, because there was an individual, a witness, who testified. What were they going to? What was the purpose of them saying to the officer, yeah, this person on the video is Franco? If it's not being offered for the truth of that, that that is, in fact, Franco, what is it being offered for? It was to develop, it's really effect on the listener, Your Honor, and that was the argument that was made in the court below, that it was essentially the way in which Special Agent Fira was able to develop the investigative lead, identify Mr. Franco. Effect on the listener is, oh, I know who this person is now, so I'm going to go and arrest him. That's the effect on the listener. But ultimately, Your Honor, this wasn't the identification that was offered to the court. The court had the opportunity to look at still images, which are provided in the appendix, showing Mr. Franco, showing Mr. Franco's tattoos, which his probation officer recognized and said, I see those same tattoos, and I see that same individual in the still images and video of Mr. Franco selling narcotics to a confidential informant. That's not hearsay. Those aren't out-of-court statements. That was an identification that the witness was permitted to engage in, and it was an identification that the court itself, as the fact finder, engaged in in this case. In any event, Your Honor, we would argue that it was harmless error, given the significant evidence of the defendant's guilt on the remaining specifications. And the final point we would note, Judge, is that the court did, in fact, and this is contrary to what the defendant argues in their briefing, the court did, in fact, engage in a could-cause analysis. The court was not required to, because these statements were not offered as hearsay, but the court engaged in that analysis at docket 23 on the district court docket, when it affirmed or held that these statements, that the statements that had been briefed prior to the hearing were admissible. They were admissible because they were not hearsay, and in any event, they satisfied the good-cause prong that the government had briefed in the court below. For those reasons, I see that my time has expired. Unless the court has any other questions, we would urge the court to affirm the lower court's revocation of supervised reliefs. All right. Thank you. To start where the government left off, ID was the issue at the hearing, and the Let me just have you clarify one thing for me. If you were assuming arguendo, you're correct, what relief is available? Reversal and remand. And what practical effects would that have? There would need to, depending on how the court ruled, there would either need to be a good-cause analysis conducted, or just a new hearing where the defense was able to cross-examine the actual witnesses who identified Mr. Franco. But, you know, I think the government makes an argument, and I ask questions about this. I could totally understand your argument if the source of identification, this is a bench trial of a revocation hearing. The judge has to decide the identity of the defendant. No testimony came in about, it was basically Ferro testifying that he got this lead from the DA that the person in the photo, from the video, presumably a still photo, was the defendant. That's not a lead, though. That's the whole question. No, if that was the only source of identification, I would tend to agree. But if that was introduced to show what he did then, he then took that information, obtained pictures of the defendant, compared them himself to the video, showed it to his probation officer, and then those are admitted to the court. And the court, as the trier of fact, it seems to me then it goes to wait. No, Your Honor. So that how they got the idea that it might be the defendant, you're right, it would be the sole ID if that's all they were relying on. But if it was only used to then develop information, I don't see how that goes, that is hearsay. If in a trial an agent cannot say we have this person, we didn't know who it was, I called, was in a conversation with DA about somebody else, and said, oh, by the way, do you know who this person is? And they say, it's this guy. And then I take pictures and go to other sources that were there and introduce not that as the identification, that would come in for the effect it had on what the officer did or did not do during the course of the investigation. I don't see how that's hearsay, and I don't see how it's problematic when the court then has the photos to compare. I think Judge Lee hit the nail on the head on this one. The identification, which is the main issue, somebody else saying that's Mr. Franco, that's hearsay. Police do that all the time. In a crime scene, they might report to a crime scene, they're trying to identify people. They say, hey, does anybody know who this is? They have a video or something. That's done. They don't rely on that to establish identity, but that is how they develop a lead. If somebody tells them who the person is, they do rely on that to establish identity, and it is hearsay, and they call that person to testify. Briefly on the tattoo issue, the first video, the person that they're saying is Mr. Franco, has their arms completely covered up with a coat. It's not clear from those videos that that person is the same person in the second video without the hearsay testimony from the informant. The tattoo itself is not unique. It appears to be of a marijuana leaf, and we are talking about drug dealers. That is not something that should give this court any sort of satisfaction that there wasn't a serious error here. This is an identification case. The video does not show to any of us who it is, and they rely on these other people, and that's error. It's a sleight of hand that the government is making to call an identification not hearsay, and that's to cover up the fact that there is no good cause here not to call these people. One of them seems to be a member of a local prosecutor's office, law enforcement. They could have easily come in to testify. Can you—I know you're way over time, so I want to give you a chance to respond to the government's argument on the other issue. Thank you, Your Honor. And specifically, if you have a response to their claim that because this was—he was incarcerated for violation of the supervised release pre-revocation, that that makes a difference. Right. So the statute doesn't use the word new. It's just not there. They are asking to create an exception to the statute that it's only in connection with a new conviction. There's no support for that. Busey, from this court, is exactly about a situation where there's no new conviction. It's a parole violation. That's not new. It's something that relates back to a previous conviction. The one case they rely on is out of circuit. It's Block from the Seventh Circuit. That's an outlier. And in that case, they're analyzing a different statute. They are talking about 3583E, which is about the revocation of supervised release, not about 3624E, which is what we're talking about here. And in Block, they don't rely on the Supreme Court cases about 3624E. They rely on a second Johnson case from the same year, 2000, that talks about 3583E, and then the new statute that allows for supervised release after revocation. The justices engage in what they call this metaphysical discussion about can you be on supervised release while also being incarcerated. And it's all towards deciding that you can get more supervised release when you come out. That case way predates Mott. It way predates Busey. And it's not about the statute that your honors are considering today. So the plain language of the statute very much supports our position. Thank you. Thank you. Thank you. Thank you both. We'll take the case under advisement.